```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------x
DEAN SIOKAS,

                              Plaintiff,          REPORT AND
                                                  RECOMMENDATION
       -against-                                  21-cv-236 (DRH)(SIL)

IRONSTONE CAPITAL HOLDINGS LLC doing
business as IRONSTONE SUPPLIES and ERIC
IRONS, ESQ.,

                              Defendants.
----------------------------------------------------------------x
```

**STEVEN I. LOCKE, United States Magistrate Judge:**

Presently before the Court in this diversity-breach of contract action, on referral from the Honorable Denis R. Hurley for Report and Recommendation, are: (1) Defendants' Eric Irons, Esq. ("Irons") and Ironstone Capital Holdings LLC ("Ironstone," and together with Irons, "Defendants") motion for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure ("Fed. R. Civ. P.") as to Plaintiff Dean Siokas's ("Plaintiff" or "Siokas") second cause of action for failure to pay Siokas sales commissions in a timely manner, *see* Defendants' Notice of Motion for Judgment on the Pleadings ("Defendants' Motion" or "Def. Mot."), Docket Entry ("DE") [29]; and (2) Plaintiff's letter motion to strike certain arguments first raised in Defendants' reply memorandum in support of their motion. *See* Plaintiff's Letter Motion to Strike ("Plaintiff's Motion" or "Pl. Mot."), DE [32]. By way of Complaint dated December 30, 2020, later modified by an Amended Complaint dated February 24, 2021, Plaintiff commenced this action against Defendants for: (1) breach of contract; (2) failure to timely pay earned sales commissions in violation of

the New York Labor Law ("NYLL"); (3) *quantum meruit*; and (4) unjust enrichment. *See* Complaint ('Compl."), DE [1-3] (attached to Defendants' Notice of Removal from Supreme Court of the State of New York, Nassau County to the United States District Court, Eastern District of New York ("Notice of Removal"), DE [1]); Amended Complaint ("AC"), DE [9]. Defendants deny liability. *See* Answer and Counterclaim ("Ans."), DE [2]; Amended Answer and Counterclaim ("AA"), DE [8]; Answer to Amended Complaint and Counterclaim ("ACA"), DE [10]. For the reasons set forth below, the Court respectfully recommends that: (1) Defendants' Motion be granted in part and denied in part; (2) Plaintiff's Motion be denied in its entirety; and (3) Plaintiff's second cause of action be dismissed without prejudice and with leave to replead.

I. **BACKGROUND**

**A. The Parties**

Unless otherwise indicated, the facts set forth herein are taken from the Amended Complaint, and accepted as true for purposes of the instant Report and Recommendation.

Plaintiff is a New York domiciliary, residing in Nassau County. *See* AC ¶ 4. Defendant Irons is a Florida resident who, until on or about March 31, 2020, was admitted to practice law in Florida and was the sole owner of his Miami-based law practice, the Irons Law Group.[1] *Id.* at ¶¶ 7-8. At all relevant times, Irons also solely

---

[1] Even after Irons became ineligible to practice law in Florida, including throughout his interactions with Siokas, Irons allegedly still held himself out to Plaintiff and others as a practicing attorney, and did not inform Siokas that he had been rendered ineligible to practice law in Florida. *See id.* at ¶ 9.

2

owned Defendant Ironstone, a Florida limited liability company with its principal place of business located at 1000 Brickell Avenue, Suite 920, Miami, FL 33131 ("Brickell Ave. Office") that conducted business throughout the United States, including New York State. *Id.* at ¶¶ 5-6. Ironstone was in the business of selling large quantities of Personal Protective Equipment ("PPE") products, such as masks and gowns, to individual states, municipalities, and other large-scale customers during the COVID-19 pandemic. *Id.* at ¶ 10. For the duration of the facts outlined herein, Irons utilized the Brickell Ave. Office as the principal place of business for both Ironstone and Irons Law Group, and both entities shared the same internet and web server, and professional support staff. *See id.* at ¶¶ 12-13. Irons also used his law firm email address to communicate with Ironstone customers, and allegedly comingled funds between Irons Law Group's, Ironstone's, and his own personal bank accounts, and used funds from each account to fund Ironstone's operations described below. *See id.* at ¶¶ 14-15.

### B. The Parties' Business Relationship

In or about April 2020, Irons recruited Siokas to work for Ironstone as an independent contractor-sales representative, where Plaintiff would locate buyers for PPE sourced and sold wholesale by Ironstone.[2] *See id.* at ¶ 18. During this solicitation, Irons promised Siokas that he (Plaintiff) would be compensated *via* commission equaling a percentage of Siokas's successfully completed sales. *See id.*

---

[2] Defendants concede that they employed Plaintiff as a "sales representative" under the NYLL. *See* Defendants' Memorandum of Law in Support of their Motion for Judgment on the Pleadings ("Def. Mem."), DE [29], at 1-2.

3

Plaintiff and Irons discussed the terms of Siokas's employment *via* email and text message, before finalizing an agreement ("Sales Commission Contract") containing the following material terms: (i) upon the completion of a sale, Irons would first be repaid the cost incurred to purchase and deliver the PPE to the customer; (ii) Defendants would then receive 20% of the profit of the sale "to account for the cost of capital to finance the purchase of the PPE products as well as the overhead"; and (iii) the remaining profit would be split evenly between Defendants, Siokas, and the individual who procured the PPE (the "Procurer")[3]. *See id.* at ¶ 22. According to Plaintiff, the overhead costs for which Defendants were reimbursed under the Sales Commission Contract included "the cost of using Irons Law Group's employee(s), rent for the Brickell Ave. Office used by both Ironstone and [the] Irons Law Group, the web server used by both in their daily operations, and overnight mail." *Id.* at ¶ 23. Siokas agreed to work for Defendants, and thereafter solicited business in New York and engaged in transactions for PPE with customers in New York and other states. *See id.* at ¶¶ 11, 22. Notwithstanding the parties' agreement, Defendants failed to both provide Plaintiff with a signed copy of the Sales Commission Contract and obtain a signed receipt of the contract from him. *See id.* at ¶ 32.

Also around April 2020, Irons hired the Procurer to work for Defendants in sourcing and procuring the PPE products that Siokas sold (on behalf of Ironstone) to Ironstone's customers. *Id.* at ¶ 19. Irons allegedly pledged to the Procurer that he, like Plaintiff, would be paid a commission equaling a percentage of the completed

---

[3] Neither party has provided the Court with any information regarding the Procurer, save for the facts in the Complaint.

4

sales of the PPE products he (the Procurer) obtained. *Id.* at ¶ 20. Irons promised both Siokas and the Procurer that he would provide the financing that the Procurer used to acquire the PPE inventory, which Plaintiff sold to states and other customers. *Id.* at ¶ 21.

### C. Deterioration of the Parties' Business Relationship

In reliance on the Sales Commission Contract, Siokas arranged and consummated numerous profitable PPE sales to several states, the revenue from which was transferred to bank accounts controlled by Defendants. *See id.* at ¶ 24. Plaintiff performed his duties by, among other things, soliciting customers both within and outside of New York State and making sales by phone and email while working from his home in Nassau County, New York. *Id.* at ¶ 25. In or about July 2020, after Siokas had performed under the agreement as a commission-compensated sales representative, Defendants attempted to change the agreed-upon terms and refused to pay Plaintiff any of the commission compensation he was owed for previously completed sales. *See id.* at ¶ 26. At that point, Siokas was owed approximately $525,760.90 in commission revenue in accordance with the terms of the Sales Commission Contract. *Id.* at ¶ 27. As of the date the parties' motions were submitted, Defendants had not paid Plaintiff any of these commissions. *Id.*

### D. Procedural History

Based on the above facts, Siokas commenced this action against Defendants on December 30, 2020, in the Supreme Court of the State of New York, Nassau County. *See* Compl.; AC. The Amended Complaint alleges that Defendants withheld

$525,760.90 in sales commission earned by Siokas on sales of PPE to Ironstone customers consummated between April and July 2020 in breach of the parties' Sales Commission Contract, and that Defendants became unjustly enriched as a result. *See* AC ¶¶ 17-27.  Plaintiff seeks:  (1) compensatory damages in a minimum amount of $525,760.90; (2) attorneys' fees; and (3) costs.  *See id.* at 8-9.  On January 15, 2021, Defendants removed the matter to this Court, *see* Notice of Removal, and filed their Answer and Counterclaim.  *See* Ans.  Defendants amended their Answer and Counterclaim on February 3, 2021.  *See* AA.  Plaintiff filed his Amended Complaint on February 24, 2021, *see* AC, in response to which Defendants filed another Answer and Counterclaim.  *See* ACA.

The parties appeared before Magistrate Judge A. Kathleen Tomlinson[4] for an Initial Conference on May 7, 2021, after which point discovery commenced.  *See* DE [13].  On referral from Judge Hurley, *see* June 7, 2021 Electronic Order, Defendants moved for a judgment on the pleadings as to Plaintiff's second cause of action on July 8, 2021, *see* Def. Mot., which Siokas opposed on July 22, 2021, *see generally* Plaintiff's Opposition to Defendants' Motion for Judgment on the Pleadings ("Plaintiff's Opposition" or "Pl. Opp."), DE [30], and against which he moved to strike certain arguments first raised in Defendants' reply papers in support of their motion on August 3, 2021.  *See* Pl. Mot.  Defendants opposed Plaintiff's Motion on August 4, 2021.  *See generally* Defendants' Opposition to Plaintiff's Motion to Strike ("Defendants' Opposition" or "Def. Opp."), DE [33].  For the reasons set forth below,

---

[4] This matter was transferred from Magistrate Judge Tomlinson to this Court on November 10, 2021. *See* November 10, 2021 Electronic Order.

the Court respectfully recommends that: (1) Defendants' Motion be granted in part and denied in part; (2) Plaintiff's Motion be denied in its entirety; and (3) Plaintiff's second cause of action be dismissed without prejudice and with leave to replead.

## II. LEGAL STANDARDS

### A. Fed. R. Civ. P. 12(c)

Pursuant to Fed. R. Civ. P. 12(c), "[a]fter the pleadings are closed – but early enough not to delay trial – a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). The standard for addressing a Rule 12(c) motion mirrors that for a Rule 12(b)(6) motion to dismiss for failure to state a claim. *Hogan v. Fischer*, 738 F.3d 509, 514-15 (2d Cir. 2013) (citation omitted). To survive a motion to dismiss pursuant to either Rule 12(b)(6) or Rule 12(c), a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1940 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 1975 (2007)). A claim is considered plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678, 129 S. Ct. at 1949 (citation omitted). A Rule 12(c) motion should be granted "if, from the pleadings, the moving party is entitled to judgment as a matter of law." *Dargahi v. Honda Lease Trust*, 370 Fed. App'x 172, 174 (2d Cir. 2010) (internal quotation marks and citation omitted); *Nathaniel v. City of N.Y.*, No. 16-cv-256, 2017 WL 3912986, at *1 (E.D.N.Y. Sept. 6, 2017).

B. <u>Motion to Strike</u>

It is well-settled that federal courts have inherent authority to control their own dockets, and a court's discretion to strike portions of opposition or reply papers falls squarely within the ambit of such authority.[5] *See Madorskaya v. Frontline Asset Strategies, LLC*, No. 19-cv-895, 2021 WL 3884177, at *18 (E.D.N.Y. Aug. 31, 2021) (quoting *Gurrieri v. County of Nassau*, No. 16-cv-6983, 2018 WL 6590564, at *7 (E.D.N.Y. Dec. 14, 2018) ("Ultimately, it is within the Court's discretion whether to strike portions of reply papers."); *see also Bey v. City of New York*, No. 01-cv-8906, 2010 WL 3910231, at *2 (S.D.N.Y. Sept. 21, 2010), *judgment entered sub nom. Kelly v. City of New York*, 2010 WL 4910240 (S.D.N.Y. Nov. 16, 2010), and *aff'd*, 454 Fed. App'x 1 (2d Cir. 2011); *Farid v. Bouey,* 554 F. Supp. 2d 301, 313 (N.D.N.Y. 2008) (considering motion to strike "squarely lies within the inherent authority of the court")); *Aurora Loan Servs., Inc. v. Posner, Posner & Assocs., P.C.*, 513 F. Supp. 2d 18, 19 (S.D.N.Y. 2007)

In this regard, it is well-established that "new arguments may not be made in a reply brief," *Ernst Haas Studio, Inc. v. Palm Press, Inc.*, 164 F.3d 110, 112 (2d Cir. 2000) (citing *Knipe*, 999 F.2d at 711), and it is similarly improper for a litigant "to submit on reply evidentiary information that was available to the moving party at the time that it filed its motion and that is necessary in order for that party to meet its burden." *Monaghan v. Airlines*, No. 16-cv-3528, 2018 WL 3682482, at *4 (E.D.N.Y.

---

[5] The Court's ability to address new material introduced for the first time in reply papers is separate and apart from the provisions of Rule 12(f), which governs motions to strike a portion, or the entirety of, a pleading. *See Knipe v. Skinner*, 999 F.2d 708, 711 (2d Cir. 1993).

8

Aug. 2, 2018) (quoting *Revise Clothing, Inc. v. Joe's Jeans Subsidiary, Inc.*, 687 F. Supp. 2d 381, 387 (S.D.N.Y. 2010)).

### III. DISCUSSION

Applying the standards set forth above, and for the reasons set forth below, the Court respectfully recommends that: (1) Defendants' Motion be granted in part and denied in part; (2) Plaintiff's Motion be denied in its entirety; and (3) Plaintiff's second cause of action be dismissed without prejudice and with leave to replead.

#### A. **Defendants' Motion for Judgment on the Pleadings**

As set forth above, Defendants move pursuant to Rule 12(c) to dismiss Plaintiff's NYLL sales commission claim. Under NYLL § 191-c, which "governs the payment of sales commissions '[w]hen a contract between a principal and a sales representative is terminated[,]'" sales representatives are to be paid their earned commissions "within five business days after termination or within five business days after they become due in the case of earned commissions not due when the contract is terminated." *DeLuca v. AccessIT Grp. Inc.*, 695 F. Supp. 2d 54, 61 (S.D.N.Y. 2010) (quoting N.Y. Lab. Law § 191-c(1)). Similarly, a prevailing sales representative can collect double damages, attorney's fees, and costs from a principal that fails to timely pay commissions according to the terms of a contract between the parties. *See* NYLL § 191-b(3) ("A sales representative during the course of the contract, shall be paid earned commissions and all other monies earned or payable in accordance with the agreed terms of the contract…").

Here, both Defendants seek a judgment on the pleadings against Plaintiff's second cause of action for failure to pay Siokas commissions in a timely manner, on the grounds that: (1) Plaintiff fails to establish that Ironstone is a "principal" under the NYLL; and (2) the parties' business agreement was never reduced to writing; and (3) even if it was sufficiently memorialized in writing, it was never signed, as required by the NYLL. *See* Def. Mem. at 1-2.

### 1. Ironstone Is Not a "Principal" Under the NYLL

NYLL § 191-a(c) defines a "principal" as "a person or company engaged in the business of manufacturing" who: "(1) manufactures, produces, imports, or distributes a product for wholesale; (2) contracts with a sales representative to solicit orders for the product; and (3) compensates the sales representative in whole or in part by commissions." N.Y. Lab. Law § 191-a(c); *see also Szafran v. Sandata Techs. Inc.*, 452 Fed. App'x 41, 44 (2d Cir. 2011) (citing N.Y. Lab. Law § 191-a(3)) (A "principal" is "defined as a 'company engaged in the business of manufacturing, and who…[m]anufactures, produces, imports, or distributes a product for wholesale.'").

Similarly, a "sales representative" is "a person or entity who solicits orders in New York state" and "is an independent contractor." *Derven v. PH Consulting, Inc.*, 427 F. Supp. 2d 360, 369 (S.D.N.Y. 2006) (citing N.Y. Lab. Law § 191-a(d) (2006)); *see also N. Shore Window & Door, Inc. v. Andersen Corp.*, No. 19-cv-6194, 2021 WL 4205196, at *13, n. 13 (E.D.N.Y. Aug. 3, 2021) (same); *AHA Sales v. Creative Bath Prods.*, 58 A.D.3d 6, 15, 867 N.Y.S.2d 169, 177 (2d Dep't 2008) ("[P]laintiff fits the

statutory definition of 'sales representative' because it is an entity which solicits orders in New York State and is an independent contractor.").

Applying the above case law, and notwithstanding Defendants' concession that they employed Plaintiff as a "sales representative" under the NYLL, *see* Def. Mem. at 5-6, the Court concludes that this prong of Defendants' Motion should be granted because Siokas has failed to establish that Ironstone qualifies as a "principal" under the NYLL. Initially, while the parties agree that Plaintiff has sufficiently alleged that: (1) Defendants distributed PPE for wholesale; (2) the parties agreed for Siokas to solicit orders for PPE; and (3) Plaintiff was to be compensated "in whole or in part by commissions," *see generally* Def. Mem.; Pl. Opp., Siokas has not alleged that Ironstone was engaged in manufacturing, and has offered no caselaw or canon of statutory interpretation to support his position that NYLL § 191-a(c) should, or was even intended to, apply to an individual or entity that was not engaged in manufacturing. Moreover, Plaintiff has failed to provide the Court with a single case that explicitly applies § 191 to non-manufacturing entities.

Indeed, the one case that Siokas cites that could support his interpretation of § 191-a(c) – *Charles G. Bailey LLC v. Sourcing Sols. LLC*, Case No. 155908/2012, 2013 WL 1970390 (N.Y. Sup. Ct., New York Cnty. 2013) – relies on explicit contractual language, cited in the complaint in that case, to support the plaintiff's allegation that the distribution company-defendant was a "principal" for NYLL purposes. Here, save for a single reference, *see* AC ¶ 22, Plaintiff fails to include any of the Sales Commission Contract's substantive details in the Amended Complaint,

11

leaving the Court unable to properly analyze the relevant contractual language before deciding the first prong of Defendants' Motion.  For this reason, and because the Court believes that these facts will be crucial to this matter moving forward, the Court respectfully recommends that:  (1) this prong of Defendants' Motion be granted; (2) Siokas's second cause of action be dismissed without prejudice; and (3) Plaintiff be granted leave to replead in order to remedy the identified pleading deficiencies.

2. A Written Contract Governs the Parties' Prior Business Relationship

Having determined that Siokas's second cause of action should be dismissed, the Court nevertheless addresses Defendants' remaining arguments for the sake of a complete record.  Under NYLL § 191-b, "[w]hen a principal contracts with a sales representative to solicit wholesale orders within this state, the contract shall be in writing and shall set forth the method by which the commission is to be computed and paid."  N.Y. Lab. Law § 191-b.  Thus, in order to state a claim under NYLL §§ 191-b and 191-c, a plaintiff must allege:  (1) the existence of a written contract containing separate terms; (2) for payment by commission; (3) between a principal and a sales representative, as those terms are defined above; and (4) that the sales representative solicited orders in New York.  *See id.*; *see also McCoy Assocs. v. Nulux, Inc.*, 218 F. Supp. 2d 286, 293 (E.D.N.Y. 2002) (citing N.Y. Lab. Law § 191-b).  Similarly, under NYLL § 191-b(2), the principal is obligated to not only "provide each sales representative with a signed copy of the contract," but must also "obtain a signed receipt for the contract from each sales representative."  N.Y. Lab. Law § 191-b(2).

12

In terms of construction, New York courts have long held that the requirement of a "writing" may be satisfied by multiple documents which, when read together, memorialize the terms of the parties' agreement. *See, e.g.*, *Crabtree v. Elizabeth Arden Sales Corp.*, 305 N.Y. 48, 54, 110 N.E.2d 551, 553 (1952) ("The statute of frauds does not require [a contract] to be in one document. It may be pieced together out of separate writings, connected with one another either expressly or by the internal evidence of subject matter and occasion.") (internal quotation marks and citations omitted). More recently, those same courts consider electronic communications to be sufficient to satisfy the requirements of a written contract. *See Newmark & Co. v. 2615 East 17th Street Realty LLC*, 80 A.D.3d 476, 477, 914 N.Y.S.2d 162, 164 (1st Dep't 2011); *see also Naldi v. Grunberg*, 80 A.D.3d 1, 3, 908 N.Y.S.2d 639, 640 (1st Dep't 2010) ("e-mail will satisfy the statute of frauds so long as its contents and subscription meet all requirements of the governing statute").

Applying these standards, the Court concludes that Siokas has established the existence of a written contract that, but for Defendants' actions, would have been signed by both parties, and respectfully recommends that this prong of Defendants' Motion be denied. Initially, Siokas has sufficiently pled the existence of a written contract governing that governed the parties' business relationship through the Amended Complaint, which explicitly alleges:

> During the relevant time frame, via electronic messages, including but not limited to emails and text messages and other electronic forms of written communication, Plaintiff and Irons discussed and ultimately entered into an agreement ("Sales Commission Contract") whereby after the completion of a sale of PPE products where Irons was first repaid his money to actually purchase the PPE products to deliver to a

13

> customer, the Defendants would then be paid 20% of the profit of the sale to account for the cost of capital to finance the purchase of the PPE products as well as the overhead, and, thereafter, the remaining profit from the sale would be split evenly: 33 & 1/3% to Defendants, 33 & 1/3% to Plaintiff, and 33 & 1/3% to the Procurer. Plaintiff agreed to these terms and performed the services required.

*See* AC ¶ 22. Defendants likewise acknowledge Siokas's allegations in their motion papers, noting that the Amended Complaint alleges that "the parties entered into an agreement" through "electronic messages" but conclusively assert that these allegations are insufficient to establish "any kind of written agreement." Def. Mem. at 12. Under the above case law, the Court concludes that Plaintiff has sufficiently established the existence of the parties' written contract.

### 3. The Lack of a Signed Agreement Is Not Fatal to Plaintiff's Claim

Defendants next contend that the Sales Commission Contract is unenforceable because, even if it was written, it was neither signed nor subscribed. *See* Def. Mem. at 13-15. The Amended Complaint again undercuts this argument. Indeed, Siokas alleges that, contrary to the requirements of NYLL § 191-b(2), Ironstone – the purported "principal" – failed to provide Plaintiff – the undisputed "sales representative" – with a signed copy of the Sales Commission Contract, or obtain Siokas's reciprocal signature. *See* AC ¶ 32. Defendants' failure to address this allegation in any of their responsive pleadings, at the very least, precludes the Court from granting this prong of Defendants' Motion. *See Powermat Tech., Ltd. v. Belkin Intl. Inc.*, No. 19-cv-878, 2020 WL 2892385, at *1 (S.D.N.Y. Apr. 2, 2020) (denying plaintiff's motion for judgment on the pleadings in light of "significant issues of fact" between the parties' pleadings). The Court thus concludes that Siokas has

14

sufficiently established the existence of a written contract governing the parties' business relationship that, but for Defendants' alleged actions in contravention of the NYLL, would have been signed. Accordingly, the Court respectfully recommends that this prong of Defendants' Motion also be denied.

### B. Plaintiff's Motion to Strike

Siokas next moves to strike a portion of Defendants' reply in support of their motion, wherein Defendants apparently "belatedly argue that [Plaintiff's second] cause of action is barred by a subsection of the New York Statute of Frauds (General Obligations Law ("GOL") § 5-701(a)(10)), a subsection not previously cited or discussed in any way by the parties." Pl. Mot. at 1. As noted above, parties may not assert new arguments in reply papers, *see Ernst Haas Studio, Inc.*, 164 F.3d at 112 (citing *Knipe*, 999 F.2d at 711); *see also Monaghan*, 2018 WL 3682482, at *4 (quoting *Revise Clothing, Inc.*, 687 F. Supp. 2d at 387), and it is ultimately "within the Court's discretion whether to strike portions of reply papers." *Madorskaya*, 2021 WL 3884177, at *18; *see also Gurrieri*, 2018 WL 6590564, at *7. Moreover, in exercising this discretion, courts typically consider the extent to which, if any, the moving party will be prejudiced if the alleged new information is not stricken. *See Monaghan*, 2018 WL 3682482, at *1 (declining to strike new evidence in a defendant's reply papers because even if the court had considered it, the court's ruling on the motion would not have changed).

Applying these standards, the Court respectfully recommends that Plaintiff's Motion be denied. Initially, the Court notes that Defendants only referenced New

15

York's GOL § 5-701(a)(10) in their reply memorandum in an attempt to clarify the holding of a case cited by Siokas, not to argue for the statute's application to the case at hand. *See* Defendants' Reply Memorandum, DE [31], at 8-10. Moreover, because: (i) this information would not change or otherwise impact the Court's analysis above; and (ii) Plaintiff has not alleged that he would be prejudiced by the information in Defendants' reply, there is no need to strike the statute of frauds reference. *See Madorskaya*, 2021 WL 3884177, at \*18 (citing *Monaghan*, 2018 WL 3682482, at \*4 (declining to strike new evidence included in defendant's reply papers because even if the court had considered it, it would not have changed the court's ruling on the motion)). Accordingly, the Court respectfully recommends that Plaintiff's Motion be denied.

### C. Leave to Replead

Given the Court's above analysis, and because it is not readily apparent that further amendment would be futile, the Court recommends that Siokas be granted one final opportunity to replead his second cause of action consistent with the analysis above. *See Grimes-Jenkins v. Consol. Edison Co. of New York, Inc.*, No. 16-cv-4897, 2017 WL 2258374, at \*16 (S.D.N.Y. May 22, 2017), *report and recommendation adopted*, 2017 WL 2709747 (S.D.N.Y. June 22, 2017) (citing *Cruz v. TD Bank, N.A.*, 742 F.3d 520, 523 (2d Cir. 2013) (*per curiam*) (recognizing that "it is the usual practice…to allow leave to replead" when a complaint is dismissed for failure to state a claim upon which relief can be granted)); *Delacruz v. City of New York*, No. 15-cv-3030, 2016 WL 5390898, at \*4 (S.D.N.Y. Sept. 26, 2016) (same).

## IV. CONCLUSION

For the reasons set forth above, the Court respectfully recommends that: (1) Defendants' Motion be granted in part and denied in part; (2) Plaintiff's Motion be denied in its entirety; and (3) Plaintiff's second cause of action be dismissed without prejudice and with leave to replead.

## V. OBJECTIONS

A copy of this Report and Recommendation is being served on all parties by electronic filing on the date below. Any objections to this Report and Recommendation must be filed with the Clerk of the Court within fourteen days of receipt of this report. Failure to file objections within the specified time waives the right to appeal the District Court's order. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 72; *Ferrer v. Woliver*, No. 05-cv-3696, 2008 WL 4951035, at *2 (2d Cir. Nov. 20, 2008); *Beverly v. Walker*, 118 F.3d 900, 902 (2d Cir. 1997); *Savoie v. Merchants Bank*, 84 F.3d 52, 60 (2d Cir. 1996).

Dated:   Central Islip, New York
         January 11, 2022

/s/ Steven I. Locke
STEVEN I. LOCKE
United States Magistrate Judge